Filing # 89416933 E-Filed 05/13/2019 04:43:09 PM

IN THE CIRCUIT COURT FOR THE<br>
11TH JUDICIAL CIRCUIT IN AND<br>
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.

GORDON APPLEBY

    Plaintiff,

v.

NCL (BAHAMAS) LTD. a Bermuda Company
d/b/a NORWEGIAN CRUISE LINE,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

GORDON APPLEBY ("Plaintiff"), by and through his undersigned counsel, sues Defendant, NCL (BAHAMAS) LTD. a Bermuda Company d/b/a NORWEGIAN CRUISE LINE, (Defendant), and states at all material times:

1. This is an action for damages that exceed fifteen thousand dollars ($15,000.00), exclusive of interest, costs, and attorney fees.

2. Defendant, NCL (BAHAMAS) LTD. a Bermuda Company d/b/a NORWEGIAN CRUISE LINE, at all times material hereto, personally or through an agent:

    a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

    d. Committed one or more of the acts stated in Florida Statutes, Section 48.081, 48.181 or 48.193;

    e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

1

3. Plaintiff brings this action at law for damages.

4. Plaintiff sues Defendant in personam for its negligence.

5. Plaintiff has satisfied all conditions precedent or they are waived.

6. Plaintiff is a Canadian citizen because he permanently resides in Canada, votes in Canada, is homesteaded in Canada, and pays taxes according to his Canada citizenship.

7. Defendant is a foreign citizen for the purposes of this legal action because it is a Bermuda company with its principal place of business in Florida. *Caron v. NCL (Bah.), Ltd.*, 910 F.3d. 1359 (11th Cir. 2018).

## Venue

8. Venue refers to the location where a case will be heard. *In re Mickler*, 163 So. 2d 257, 259 (Fla. 1964); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939).

9. Venue differs from jurisdiction. *See Lane v. State*, 388 So. 2d 1022, 1026 (Fla. 1980); *Neirbo*, 308 U.S. at 167-68.

10. A party can stipulate or consent to venue. *Smith v. Williams*, 160 Fla. 580, 587 (1948); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592-93 (1991).

11. It cannot be overstated that stipulating to personal jurisdiction or venue has no bearing on whether a court has subject matter jurisdiction over a claim. *See Pro-Art Dental Lab, Inc. v Strategic Group, LLC*, 986 So. 2d 1244, 1253-54 (Fla. 2008); *see also Leroy v. Great Western United Corp.*, 443 U.S. 173, 181 (1979).

12. Miami-Dade County is a proper venue for this case because Defendant is headquartered here. Plaintiff is not bringing a contractual claim. Plaintiff's sole claim is for damages base on negligence, in personam.

2

## Personal Jurisdiction

13. Personal jurisdiction refers to a court's adjudicatory authority over the parties brought before it. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *Int'l Shoe Co. v. State of Wash, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316-17 (1945).

14. Plaintiff submits to the personal jurisdiction of this Court by filing this lawsuit.

15. A party may submit or stipulate to the personal jurisdiction of a court. *Acquadro v. Bergeron*, 851 So. 2d 665, 671 (Fla. 2003); *Waterman Oy v. Carnival Cruise Lines, Inc.*, 632 So. 2d 724, 725-27 (Fla. 3d DCA 1994); *Petrowski v. Hawkeye Sec. Ins. Co.*, 35 U.S. 495, 496 (1956).

16. This Court has personal jurisdiction over Defendant because they are headquartered in Miami-Dade County, Florida. *See Royal Caribbean Cruises, Ltd. v. Payumo*, 608 So. 2d 862, 862-63 (Fla. 3d DCA 1992).

## Subject Matter Jurisdiction

17. Subject matter jurisdiction refers to a court's adjudicatory authority over the claims brought before it. *Atlantic Coast Line. Ry. Co. v. Fla. Fine Fruit Co.*, 93 Fla. 161, 165 (1927); *Balance v. Forsyth*, 62 U.S. 389, 389-90 (1858).

18. Neither a state court nor a federal court can hear a case for which it lacks subject matter jurisdiction. *Tompkins v. State*, 894 So. 2d 857, 859 (Fla. 2005); *Carnival Corp. v. Operadora Aviomar S.A. de C.V.*, 883 F. Supp. 2d 1316 (S.D. Fla. 2012) (dismissing case because federal court lacked federal question, admiralty, and diversity subject matter jurisdiction).

19. Subject matter jurisdiction cannot be created by waiver, inaction, or stipulation.

*Winn & Lovett Grocery Co. v. Luke,* 156 Fla. 638, 641 (1945); *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985); *The Republic*, 62 U.S. 386, 388 (1858).

20. Federal courts have limited subject matter jurisdiction. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993).

21. The Supreme Court "wisely adopted a presumption that every federal court is 'without jurisdiction' unless the 'contrary affirmatively appears from the record.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 692 (1986).

22. The Federal Court does not have subject matter jurisdiction over this case because of the parties involved and the claims made.

### Admiralty and Maritime Claims

23. Admiralty and maritime claims involve a body of law and words that are often misused and misapplied. *See, e.g., Freeport Sulphur Co. v. S.S. Hermosa*, 526 F.2d 300, 305 (5th Cir. 1976) (incorrectly calling an "allision" a "collision"); *see also Corby v. Kloster Cruise Ltd.*, 1990 WL 488464, at **2-3 (N.D. Cal. Oct. 5, 1990) (incorrectly applying exculpatory clause in passenger ticket in violation of maritime law).

24. A common misconception is the application of maritime law means a court has admiralty subject matter jurisdiction. *See, e.g., Am. Dredging Co. v. Miller*, 510 U.S. 443, 446-47 (1994).

25. The application of maritime law does not affect a state court's subject matter jurisdiction over a negligence case. *E.g., Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 920 (Tex. 1993).

26. Not all claims that arise on navigable waters are subject to admiralty subject matter

jurisdiction. *Armstrong v. Ala. Power Co.*, 667 F.2d 1385, 1387 (11th Cir. 1982); *see also Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 118-19, 130-31 (2013) (dispute over houseboat on navigable water not within admiralty jurisdiction).

27. For example, federal courts have admiralty subject matter jurisdiction over maritime claims brought as a proceeding in admiralty. *J.P. v. Connell*, 93 F. Supp. 3d 1298, 1302 (M.D. Fla. 2015) (citing *Madruga v. Superior Court*, 346 U.S. 556, 560 (1954)); *The Moses Taylor*, 71 U.S. 411, 427-30 (1866).

28. However, state courts have original subject matter jurisdiction over negligence claims brought at law and in personam like Plaintiff's claims in this case, even when those claims arise on navigable water. *J.P.*, 93 F. Supp. 3d at 1302-03; *Royal Caribbean Cruises, Ltd. v. Cox*, 137 So. 3d 1157, 1158-59 (Fla. 3d DCA 2014); *Hyer v. Caro*, 17 Fla. 332, 350-62 (1879).

29. Conversely, federal courts do <u>not</u> have admiralty subject matter jurisdiction over negligence claims brought at law and in personam. *See The Belfast*, 74 U.S. 624, 644 (1868). That remains the law today. *J.P.*, 93 F. Supp. 3d at 1302; *Coronel v. AK Victory*, 1 F. Supp. 3d 1175, 1181 (W.D. Wash. 2014); *Armstrong v. Ala. Power Co.*, 667 F.2d 1385, 1387 (11th Cir. 1982).

30. The only way a federal court could have subject matter jurisdiction over a negligence claim that arose on the water, and that was brought in personam and at law, is if there is diversity subject matter jurisdiction. *E.g., In re Chimenti*, 79 F.3d 534, 538 (6th Cir. 1996).

31. When a negligence claim that arises on the water is brought at law, a plaintiff may choose to file a lawsuit against the defendant in personam in state court under the state

court's original subject matter jurisdiction, or she could choose to file a lawsuit against the defendant in personam and at law in federal court under the federal court's original diversity subject matter jurisdiction. *E.g., Coronel*, 1 F. Supp. 3d at 1181-85. There is no other way for any state or federal court to have subject matter jurisdiction over a negligence claim that arises on the water and that is brought at law and in personam. *Id.*

### This Case Lacks Federal Diversity Subject Matter Jurisdiction

32. Federal diversity subject matter jurisdiction requires complete diversity of citizenship of the parties and requires that more than $75,000 to be in controversy.

33. Plaintiff and Defendant are foreign citizens so this case is not susceptible to federal diversity subject matter jurisdiction.

### This Case Lacks Federal Question Subject Matter Jurisdiction

34. Maritime claims, like the one Plaintiff brings in this case, do not present a federal question. *See, e.g., Am. Ins. Co. v. 365 Bales of Cotton*, 26 U.S. 511, 545-46 (1828).

35. That is because maritime claims "are as old as navigation itself" and do not "arise under the Constitution or laws of the United States." *Id.*

36. The maritime nature of a case simply does not provide a ground for federal subject matter jurisdiction. *Armstrong*, 667 F.2d at 1388; *Assiff v. Carnival Corp.*, 930 So. 2d 776, 778 (Fla. 3d DCA 2006).

37. Plaintiff sues Defendant at law and in personam for negligence, so this case is not susceptible to federal question subject matter jurisdiction. *Deroy v. Carnival Corp.*, 18-CV-20653-UU (S.D. Fla. 2018).

### This Case Lacks Federal Admiralty Subject Matter Jurisdiction

38. Federal courts do not have admiralty subject matter jurisdiction over negligence claims brought at law and in personam. *See The Belfast*, 74 U.S. at 644; *J.P.*, 93 F. Supp. 3d at 1302; *Coronel*, 1 F. Supp. 3d at 1181; *Armstrong*, 667 F.2d at 1387.

39. Plaintiff sued Defendant in personam and at law for negligence, so this case is not susceptible to admiralty subject matter jurisdiction. *Deroy v. Carnival Corp.*, 18-CV-20653-UU (S.D. Fla. 2018).

## In Personam Claims and In Rem Claims

40. When a person is injured in an incident like Plaintiff in this case, the injured person can sue the responsible parties in personam in a court that has personal jurisdiction over the defendant parties, subject matter jurisdiction over the case, and is the proper venue.

41. The cost for initiating an in personam lawsuit is a few hundred dollars.

42. The injured person could bring a libel in rem against the vessel if the vessel were negligent. An in rem proceeding is an action in admiralty and can only be brought in federal court. The person bringing an in rem proceeding is called the libellant. An in rem proceeding involves having a federal marshal literally arrest the ship. *E.g.*, Warrant to Seize a Vessel, *Stumpf v. Carnival PLC*, No. 12-CV-00099 (S.D. Tex. Mar. 30, 2012). Arresting a vessel is a much more complicated and expensive process. An improper arrest of a vessel can expose the libellant to significant penalties.

43. An admiralty proceeding in rem "is not a remedy afforded by the common law; it is a proceeding under the civil law." *The Moses Taylor*, 71 U.S. at 431.

44. A negligence case brought against a defendant in personam and at law, like this

7

case, is not an action in admiralty and is not within the admiralty subject matter jurisdiction of the federal courts. *Id.*; *Armstrong*, 667 F.2d at 1388

### Master of Claims

45. A plaintiff is the master of her claims and decides which claims to bring and which remedies to seek for a wrong. *See* Fed. R. Civ. P. 8(a); Fla. R. Civ. P. 1.110(g).

46. A plaintiff is not "compelled to proceed in the admiralty at all" and "may resort to [her] common-law remedy in the state courts." *Norman v. Switzer*, 93 U.S. 355, 356 (1876).

47. In this case, Plaintiff chooses to sue Defendant at law and in personam for negligence.

48. It is the claims made, not the claims that could have been made, that determine whether a court has subject matter jurisdiction over the dispute brought before it. *Caterpillar, Inc. Williams,* 482 U.S. 386, 398 (1987); *see also Perry v. Merit Sys. Prot. Bd.,* U.S. 137 S.Ct. 1975, 1984 (2017); *Donzi Marine Corp. v. Roscioli Int'l, Inc.,* 596 So. 2d 146, 147 (Fla. 4th DCA 1992); *In re Motor Ship Pac. Carrier*, 489 F.2d 152, 157 (5th Cir. 1974); *Ernst & Ernst v. United States Dist. Ct., So. Dist. Tex.*, 439 F.2d 1288, 1293 (5th Cir. 1971); *Jett v. Zink*, 362 F.2d 723, 730 (5th Cir. 1966); *Wadkins v. Campbell*, 156 So. 2d 887, 889 (Fla. 2d DCA 1963); *Mexican Cent. Ry. Co. v. Eckman*, 187 U.S. 429, 433-34 (1903). The question of whether federal subject matter jurisdiction exists "depend[s] on the particular claims a suitor makes in a state court-on how [she] casts [her] action." *Pan Am. Petro. Corp. v. Sup. Ct. of Del. in and for New Castle County*, 366 U.S. 656, 662 (1961); *see also Foster v. Chatman,*

U.S. 136 S. Ct. 1737, 1745 (2017) (subject matter jurisdiction determined by claims made).

### Defendant's Passenger Contract

49. Plaintiff is not bringing a contractual claim for damages. Plaintiff's sole cause of action for damages is based on negligence. Plaintiff merely references some parts of Defendant's Passenger Contract to explain why the Federal Court does not have <u>subject matter jurisdiction</u> over the claims in this <u>lawsuit</u>.

50. Defendant's passenger contract requires passenger injury cases like this one to be "litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, Florida U.S.A., or as to those <u>lawsuits</u> to which the United States District Court for the Southern District of Florida lacks subject matter jurisdiction, before a court of competent jurisdiction in Miami-Dade County, Florida U.S.A. ...." (Passenger Contract ¶ 14)[1] (emphasis added).

51. Note, the question of subject matter jurisdiction turns on the contents of the passenger's <u>lawsuit</u>, not the nature of the casualty, not some hypothetical claim that could have been brought; it is the actual claims made in the <u>lawsuit</u> that control where suit must be filed.

52. Thus, Defendant acknowledge the federal courts will not have jurisdiction over every <u>lawsuit</u> between them and a passenger.

53. That is the language Defendant chose to put in their Passenger Contract.

54. Defendants cannot create subject matter jurisdiction for any court through the

---

[1] Plaintiff was not provided with a passenger ticket contract. The representations made herein are based upon a passenger ticket contract obtained by counsel for Plaintiff from Defendant's website.

9

Passenger Contract. *Winn & Lovett Grocery Co.,* 156 Fla. at 641; *Fitzgerald*, 760 F.2d at 1251; *The Republic*, 62 U.S. at 388.

55. Defendant cannot deny Plaintiff the right to a trial by a court of competent jurisdiction. 46 U.S.C. § 30509(a)(1)(B).

56. That is why Defendant has that alternative lawsuit filing provision in the contract.

### Cases Incorrectly Appearing to Address the Issue in this Case

57. *Carnival v. Shute* held a forum selection clause in a ship's passenger ticket was enforceable. 499 U.S. 585, 596-97 (1991). *Shute* does not require Plaintiff's negligence claims against Defendant in personam and at law to be filed in federal court. *Shute* does not approve limiting the Plaintiff's forum to the Federal District Court. The ticket contract approved by the Court in *Shute* contained *venue* provision which required suits against Carnival be filed in the State of Florida.

58. Respectfully, *Leslie v. Carnival Corp.* is a good example of judges and lawyers falling prey to the misuse and misunderstanding of the words and concepts that apply to negligence claims that arise on the water. 22 So. 3d 561, 567 (Fla. 3d DCA 2009). *Leslie* quotes the contractual language allowing for suits to be filed in state court in Miami-Dade County but fails to grasp the importance of that language. *Id.* at 562. *Leslie* states in a conclusory fashion that many injured passengers will be forced to file on the admiralty side of federal court. *Id.* at 564. However, *Leslie* fails to discuss that it is the claim presented that determines whether a court has subject matter jurisdiction. *See id. passim.* *Leslie* contains no discussion of the difference between in rem and in personam claims, or libel claims versus claims brought at law, or how those variables affect subject matter jurisdiction. *See id. passim.* The dissent in the *Leslie* rehearing

ruling comes so close to recognizing the distinction made in this document. *Leslie v. Carnival Corp.*, 22 So. 3d 567, 577-78 (Fla. 3d DCA 2009).

59. *Newell v. Carnival Cruise Lines* dismissed a personal injury lawsuit "because the federal court ha[d] admiralty jurisdiction over the case." 180 So. 3d 178, 179 (Fla. 3d DCA 2015). Respectfully, that was an incorrect statement. Newell sued Carnival at law and in personam in a Florida court. Therefore, Newell's claim was not a claim in admiralty that fell within the admiralty jurisdiction of the federal courts, and the dismissal and its affirmance were wrong. *Newell* incorrectly states, "Because the ticket contract between the parties mandates that where federal admiralty jurisdiction exists, Newell was required to bring her action in the United States Federal Court, and the trial court properly dismissed Newell's state court complaint with prejudice." *Id.* at 183. Defendants' passenger contract states it must be sued in federal court when the federal court has subject matter jurisdiction over the lawsuit that is filed. (Passenger Contract ¶ 12.) The Passenger Contract does not state whether a passenger must bring a claim in personam or in rem. It simply states that if the federal court has subject matter jurisdiction over the claims made in the lawsuit then it must be filed in federal court. The distinction explained in this document between claims brought in admiralty versus claims brought at law and in personam was not discussed in *Newell*.

60. Unfortunately, many other cases have conflated or confused the concepts of forum, subject matter jurisdiction, personal jurisdiction, claims presented, and applicable law when discussing negligence claims that arose on the water.

### Further Confusion

61. *Sellers v. Carnival Cruise Line* is an example of a court confusing personal jurisdiction

and subject matter jurisdiction. 2015 WL 5778758, at *1 (NY County Civ. Ct. Aug. 31, 2015). *Sellers* discusses personal jurisdiction but incorrectly cites a case discussing the inability to waive subject matter jurisdiction. *Id.*

62. In *Fritsche v. Carnival Corp.*, the court confused all three concepts and agreed with Carnival's misleading argument that the New York court "lacked personal and subject matter jurisdiction based upon the forum selection and one-year time limitation in the contract of carriage … ." 18 N.Y.S.3d 413, 414 (N.Y. 2d App. Div. 2015). As stated above, venue, personal jurisdiction, and subject matter jurisdiction are independent inquiries.

### Moments of Clarity

63. Some courts have written precise opinions acknowledging the discrete concepts of venue, subject matter jurisdiction, and personal jurisdiction. *Dirks v. Carnival Cruise Lines*, 642 F. Supp. 971, 972-74 (D. Kan. 1986) (discussing difference between personal and subject matter jurisdiction). In *Lieberman v. Carnival Cruise Lines*, the court correctly stated, "the applicability of a forum selection … clause is not a jurisdictional issue." 2014 WL 3906066, at *7 (D.N.J. Aug. 7, 2014) (ellipses in original).

64. Florida resident passenger claims brought in personam, similar to this case, have been dismissed by the federal court in the southern district for lack of subject matter jurisdiction. *See Siliakus v. Carnival Corp*, Case No. 1:18-cv-25137-UU (D.E. 14); *Diaz v. BPCL Management, LLC d/b/a Bahamas Paradise Cruise Line*, Case No. 18-cv-61379-BLOOM (D.E. 4 and 8).

### Plaintiff's Incident

65. Defendant owned, operated, possessed, and controlled the *NCL BLISS*.

12

*66.* At all times material to this action, the vessel *NCL BLISS* was located in navigable waters.

*67.* At all times relevant to this action, Defendant was engaged in the business of providing to the public, for compensation, vacation cruises aboard its vessel, *NCL BLISS*.

68. Plaintiff was a paying passenger, lawfully aboard the ship for a multi-day cruise beginning on or about June 9, 2018.

69. The cruise traveled between at least one domestic port and one foreign port.

70. Defendant knew or should have known the ship had a dangerous condition and/or a defective door in his stateroom.

71. The hazard(s) was/were hidden from Plaintiff.

72. On or about June 15, 2018, Plaintiff was severely injured due to a dangerous condition and/or defective door in his stateroom.

73. As Plaintiff entered his stateroom, an unexpected draft of air (believed to be air pressure from the open balcony door inside the cabin) ripped the stateroom door from his grasp and violently slammed the stateroom door shut on his right hand index finger.

74. The top of Plaintiff finger was sliced off by the door and he suffered a severe crush injury.

75. Plaintiff received medical care in the ship's medical facility and from Defendant's medical personnel.

76. Plaintiff received bad medical care from Defendant's medical facility and/or medical personnel and/or other crew/employees.

77. Defendant did not preserve the severed tip of Plaintiff's finger and threw it out.

13

78. Defendant delayed the provision of emergency medical treatment.

79. Defendant failed to take the necessary steps to get Plaintiff off the vessel as soon as possible for emergency medical care on shore.

80. Defendant improperly treated his finger on board the ship.

81. Plaintiff ultimately required a partial amputation of his right index finger.

82. This lawsuit is timely.

83. Defendant was actively involved in the design and selection of the cruise ship (including the stateroom, balcony door and stateroom door where Plaintiff was injured).

84. Defendant inspected, accepted, and approved the ship (including the stateroom, balcony door and stateroom door where Plaintiff was injured) before she was placed into service and after she was placed into service.

## Count 1 – Negligence

85. Plaintiff incorporates paragraphs 1-84.

86. At all times material hereto, Defendant had exclusive custody and control of the above named cruise ship, including the stateroom, balcony door and stateroom door involved in the subject incident.

87. At all times material hereto, Defendant owed a duty to their passengers, including Plaintiff, to exercise reasonable care for the health, welfare, and safety of their passengers, including the duty to exercise reasonable care to maintain and operate its cruise vessel in a reasonably safe condition.

88.     At all times material hereto, Defendant, by and through its vessel, crew, agents, servants, officers, staff, and/or employees, who were acting within the scope of their

14

employment and/or agency, undertook to create and/or design (and/or to approve the design of) and/or inspect and/or maintain, a dangerous and hazardous condition.

89. At all times material hereto, Defendant knew or, in the exercise of reasonable care, should have known that the dangers and risks associated with the subject stateroom, balcony door and stateroom door would increase the likelihood of passengers being injured.

90. Plaintiff had no knowledge of the hidden dangerous condition of the stateroom and doors, that ultimately caused him harm.

91. It was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

92. On or about June 15, 2018, Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.

93. Plaintiff was injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

   a. Negligently failed to have a door dampener or other device to slow down the rate at which the door closed;

   b. Negligently failed to provide Plaintiff sufficient warning of the dangerous condition, including but not limited to the door closing quickly and/or the wind tunnel/air pressure;

   c. Negligently failed to maintain said vessel, and more particularly the door upon which Plaintiff injured, in a reasonably safe condition;

   d. Negligently failed to adequately inspect, maintain and/or repair the subject door;

e. Accepted the ship from the contractor who built it, or it maintained a hazardous condition, specifically the dangerous door and unreasonably configured stateroom where Plaintiff injured, in failing to maintain the subject areas of the ship in a safe condition and by failing to warn Plaintiff of the dangerous and hazardous condition(s) of the stateroom and/or door which Defendant accepted upon inspection of the completed vessel from the contractor that built the vessel and about which it had actual or constructive notice;

f. Negligently failed to warn Plaintiff about the dangerous and unreasonably dangerous condition of the stateroom, balcony door and stateroom door chosen by Defendant and not known to or readily observable by Plaintiff;

g. Defendant, their agents and/or employees failed to have in place warning signs or other warnings to alert Plaintiff to the dangers posed by the aforesaid defective and/or dangerous condition of the door;

h. Negligently failed to properly train and/or supervise its crew members and/or employees to properly maintain the door so that it would not become dangerous, so that the passengers like Plaintiff would not be injured;

i. Negligently failed to implement policies or procedures to provide effective warnings to passengers of unsafe or dangerous conditions on board;

j. Negligently failed to properly train and supervise its employees and/or crewmembers regarding warning passengers of unsafe or dangerous conditions on board;

k. Negligently failed to institute safety inspection procedures to make sure that such above-described unsafe conditions aboard said vessel, were discovered and made safe;

16

l. Negligently failed to properly carry out safety inspection procedures to make sure that such above-described unsafe conditions aboard the vessel were discovered and made safe;

m. Knew of the existence of wind tunnels, air pressure and/or air drafts affecting doors on the cruise ships;

n. Knew of the existence of quickly slamming doors on the cruise ships;

o. Knew of the existence of said dangerous and defective conditions or, in the exercise of reasonable care, should have known of the existence of said dangerous conditions and failed to remedy the dangerous conditions;

p. Knew of the existence of said dangerous and defective above-described conditions, or in the exercise of reasonable care should have known of the existence of said dangerous conditions and failed to adequately repair/correct the dangerous conditions or to give an effective warning to any and all passengers including Plaintiff;

q. Negligently created said above-described dangerous and defective condition by specifying, approving and/or accepting the stateroom and door with knowledge of the dangerous nature of the door, due to other incidents on the same or similar doors on board the *NCL BLISS* and/or throughout its fleet of vessels and/or other cruise lines vessels;

r. Negligently selecting the door and door equipment utilized in the area where Plaintiff was injured, because of the prior incidents on the same or similar doors utilized on board the *NCL BLISS* and/or the other vessels throughout its fleet and/or other cruise line vessels;

    s.   Negligently failing to determine the door dampener or other door mechanism was inadequate before allowing passengers to utilize the stateroom;

    t.   Negligently failed to maintain said vessel, and more particularly failed to provide a reasonably safe door for use on is ship, failed to inspect and/or test the door and its mechanisms to ensure that they were properly installed and functioning reasonably safe; and,

    u.   Defendant knowing of the dangerous nature of the door because of numerous prior failures on this or other doors on its ships throughout their fleet of vessels negligently designed, constructed, selected the door and stateroom where Plaintiff was injured and/or approved the use of the door.

94.   Defendant was on actual or apparent notice of the danger(s) due to, *inter alia*, prior failures on the *NCL BLISS* and/or other ships in its fleet. *See, e.g., Taiariol v MSC Crocioere, S.A.*, 677 Fed. Appx. 599, 601 (11th Cir. 2017)("while Taiariol was not required to show that another passenger slipped on the same step while in the same theatre of the same ship during the same trip …she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps.").

95.   Defendant was also on notice of the dangerous condition by virtue of its legal and risk management departments' investigations and defense of substantially similar cases on a fleet wide basis. Defendant maintain computerized searchable records on a fleet-wide basis which records contain evidence of actual or constructive notice.

96.   Additionally, the dangerous condition was well known to Defendant because of the use of signs and/or other devices attempting to warn of the same/similar condition pertaining to doors on the *NCL BLISS* and/or other ships in the fleet. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015); *Frasca v. NCL (Bah.), Ltd.*, 654 Fed.

Appx. 949, 954 (11th Cir. 2016)(Use of warnings allows the inference that the cruise ship operator had actual or constructive knowledge).

97. Defendant was also on notice of the dangerous condition by virtue of its involvement with Cruise Line International Association and association with other cruise lines that have had substantially similar cases on cruise ships in their fleets. The dangerous condition involved in this case is an industry wide issue that provides actual or constructive notice.

98. The dangerous condition(s) created a foreseeable zone of risk to Plaintiff.

99. Defendant knew about the dangerous condition(s)s, or they existed long enough that Defendant should have discovered them in exercising due care, or they occurred with such frequency that Defendant were on notice of them.

100. Defendant created the dangerous condition(s).

101. The above described dangerous condition(s) was/were neither open nor obvious to the Plaintiff, and accordingly, the Defendant owed Plaintiff a duty to warn him and/or to correct the conditions.

102. Defendant negligently failed to determine the hazards on and near the vessel to Plaintiff, failed to eliminate the hazard, failed to modify the hazard and failed to properly warn Plaintiff of the hazard.

103. As a direct and proximate result of Defendant's negligence as described herein, Plaintiff sustained serious injuries, resulting in loss of function, pain and suffering, disability, disfigurement, mental anguish, loss of earning capacity, the expense of medical care and treatment and loss of the capacity of enjoyment of life. Additionally, Plaintiff lost the value of the monies paid for his cruise and/or carriage aboard Defendant's passenger cruise ship *NCL BLISS*. Plaintiff's losses are permanent and continuing in nature and he will suffer such losses in the future.

WHEREFORE, the Plaintiff, GORDON APPLEBY, demands judgment against the Defendant for all damages which are recoverable under the General Maritime Law of the United

States, the laws of the State of Florida and any other damages which she may be entitled to, pre and post judgment, interest; and, any and all other damages and remedies that the Court deems just and proper, and requests a trial by jury of all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all of the issues triable by right.

Dated this 13th day of May, 2019.

                                           MEISTER LAW, LLC
                                           Courthouse Tower, Suite 750
                                           44 West Flagler Street
                                           Miami, Florida 33130
                                           Phone: (305) 590-5570
                                           Fax: (305) 675-3787

                                           By s/TonyaJMeister
                                           TONYA J. MEISTER
                                           FLORIDA BAR NO.: 0629243

                                           &

CHRISTOPHER M. DRURY
Florida Bar No. 796751
cdrury@dkrpa.com
Dimond Kaplan & Rothstein, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive, Penthouse 2B
Miami, Florida 33133
Tel.: (305) 374-1920; Fax: (305) 374-1961